# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ALISA JONES, on her own behalf and
on behalf of all others similarly
situated,**

                  **Plaintiffs,**

**-vs.-**                                                           **Case No.:  6:06-cv-651-Orl-19DAB**

**TT OF LONGWOOD, INC. d/b/a
CORY FAIRBANKS MAZDA,**

                  **Defendant.**

_____

## ORDER

This case comes before the Court on the following:

1. Plaintiff's Motion for Class Certification filed by Plaintiff Alisa Jones on December 4, 2006; (Doc. No. 39);

2. Defendant's Response and Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification filed by Defendant TT of Longwood on December 21, 2006; (Doc. No. 47);

3. Defendant's Notice of Filing Affidavit of Greg McClellan filed on April 10, 2007; (Doc. No. 63);

4. Defendant's Motion and Memorandum of Law in Support of Defendant's Motion for Summary Judgment filed on May 1, 2007; (Doc. No. 71);

5. Notice of Filing Depositions [of Alisa Jones and Greg McClellan] filed in

   Support of Defendant's Motion for Summary Judgment on April 30, 2007; (Doc. Nos. 69, 72-74).

6. Plaintiff's Response to Defendant's Motion for Summary Judgment filed on May 10, 2007; (Doc. No. 77);

7. Plaintiff's Statement of Undisputed Facts, filed on May 10, 2007; (Doc. No. 78);

8. Plaintiff's Motion for Partial Summary Judgment, filed on May 29, 2007; (Doc. No. 82);

9. Plaintiff's Request for Oral Argument, filed on May 29, 2007; (Doc. No. 83);

10. Defendant's Amended Response and Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, filed on May 31, 2007; (Doc. No. 84);

11. Supplement to Deposition of Alisa Jones filed by Plaintiff on June 6, 2007; (Doc. No. 86); and

12. Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed on June 22, 2007. (Doc. No. 91).

## I. Background

The following facts are not in dispute. On June 1, 2005, Plaintiff Alisa Jones visited Defendant's dealership to purchase a new automobile, a 2005 Mazda Tribute. Plaintiff signed several documents in connection with the sale, including an application statement, a Retail Installment Sales Contract, ("RISC"), a "Car Buyer's Offer and Purchase Option Contract," and a form entitled "Bailment Agreement for Vehicle Spot Delivery." (*See, e.g.,*

Doc. No. 74, Exs. 2, 5-7, 9, filed on May 1, 2007). The Offer and Purchase Option Contract contains a clause mandating mediation should any dispute, claim, or controversy arising out of or relating to the contract arise. (*See, e.g., id.* at Ex. 6). The Bailment Agreement for Vehicle Spot Delivery provides that pending credit approval of the buyer, the purchased vehicle would remain the property of the dealer.[1] (*See id.* at Ex. 9). In connection with the transaction, Defendant ordered a copy of Plaintiff's credit report. (*See, e.g.,* Def. Ex. 13, filed on June 7, 2007; Doc. No. 98, p. 2). Plaintiff drove the vehicle away from the dealership after she had executed the documents.

Several days after the documents were signed, the Defendant notified the Plaintiff that her financing agreement had been rejected and demanded return of the vehicle. (*See, e.g.,* Doc. No. 1-1, pp. 9-10). When Plaintiff returned the vehicle, Defendant refunded Plaintiff's down payment and did not ask her to sign a second retail sales installment contract with different terms or attempt to raise the interest rate on her purchase. (Doc. No. 73, filed on May 1, 2007, at pp. 32-33). Plaintiff was not charged additional money in rental fees by Defendant and was not charged by her automobile insurer to insure the Mazda Tribute for the several days the vehicle was in her possession. (*Id.* at p. 35). Plaintiff claims that when Defendant notified her that her financing was rejected, she and her children were "emotionally crushed." (Doc. No. 29, p. 8).

After being required by Defendant to return the vehicle, Plaintiff filed the instant

---

[1] Although the allegations of the Complaint do not specifically state that the Defendant rescinded the contract, Florida courts have held that under these factual circumstances, cancellation by the dealer is tantamount to rescission. *See, e.g., Henderson v. Coral Springs Nissan, Inc.*, 757 So. 2d 577 (Fla. 4th DCA 2000).

lawsuit on her behalf and on behalf of others similarly situated, alleging the Defendant of unfair credit, lending, and business practices under the Truth in Lending Act ("TILA", Count I),the Florida Motor Vehicle Retail Sales Finance Act ("MVRSFA", Counts II and III), the Fair Credit Reporting Act ("FCRA", Count IV), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA", Count V). (*See generally* Doc. No. 29). Plaintiff voluntarily dismissed the TILA claim (Count I) on May 27, 2007. (Doc. No. 61).

Plaintiff now asks the Court to certify her proposed classes. Plaintiff further seeks partial summary judgment on the four remaining Counts of the Amended Complaint, arguing that there is no genuine issue of material fact that Defendant's actions violate the law. Defendant argues that Plaintiff is an improper class representative under all of the factors enumerated in Federal Rule of Civil Procedure 23 and that Plaintiff's claims must all be dismissed on summary judgment. The Court held an evidentiary hearing in this case on the issue of certification of the classes on June 7, 2007, and July 27, 2007. (*See, e.g.,* Doc. Nos. 87 & 96).

## II. Standard of Review

### A. Summary Judgment

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party."

*Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson*, 477 U.S. 242). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken

as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  All justifiable inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court.  *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact remaining for trial.  *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

### B.  Class Certification

Before certifying a class, the Court must be satisfied that several prerequisites are met: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In addition, the proposed class must meet the requirements of one of three class types outlined in Rule 23(b).

In the instant case, the parties seek certification under Rule 23(b)(1) and 23(b)(2),[2]

---

[2] The Court notes that certification under Rule 23(b)(2) is reserved for those cases in which the relief sought is primarily injunctive or declaratory in nature. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998).  In the instant case, Plaintiff primarily seeks compensatory damages, costs, and attorneys' fees, while the equitable relief sought appears to be of secondary importance.  Thus, although not separately addressed in this Order, certification under Rule 23(b)(2) may be inappropriate. *See, e.g., id.*; *In re Jackson Nat'l Life Ins. Co. Premium Litigation*,

which requires the Court to find that the four prerequisites in Rule 23(a) exist, as well as the requirements of the applicable subsection of Rule 23(b). Although the Court should not pass judgment on the merits of Plaintiff's claims in deciding the issue of class certification, it must conduct a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) and (b) have been met, and "it may be necessary...to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982).

### III. Analysis

After hearing oral argument and reviewing evidence and the arguments asserted by the parties in their respective Motions, the Court finds that the issues raised by the parties are common to both the motion for class certification and the cross-motions for summary judgment. Accordingly, the Court will address such common issues first before addressing the issues related solely to the Motion to Certify Class.

#### A. Plaintiff's Claims Under the Florida Motor Vehicle Retail Sales Finance Act ("MVRSFA")

Summary Judgment must be granted in favor of Defendant on Counts II and III of the Amended Complaint, as there is no genuine issue of material fact that Plaintiff has suffered no monetary damages under the MVRSFA, and thus Defendant is entitled to judgment as a matter of law.

Count II of the Complaint states that it is a claim solely for actual or statutory penalties, costs, and attorneys' fees under Sections 520.07 and 520.12(2) of the MVRSFA.

---

183 F.R.D. 217, 220 (W.D. Mich. 1998).

(Doc. No. 29, pp. 12-13). Section 520.12(2) of the MVRSFA enumerates the statutory penalties for any violation of the Act. § 520.12(2), Fla. Stat. (2006):

> In the case of a willful violation of this part with respect to any retail installment sale, the buyer may recover from the person committing such violation, or may set off or counterclaim in any action against the buyer by such person, an amount equal to any finance charge and any fees charged to the buyer by reason of delinquency, plus attorney's fees and costs incurred by the buyer to assert rights under this part.

*Id.* at § 520.12(2). Thus, in order to recover statutory damages under Section 520.12(2), the Plaintiff must have been assessed a finance charge or fee. *Id.* at § 520.12(2).

In the instant case, it is undisputed that Plaintiff was never charged a finance charge or any other fee by Defendant, and her down payment was returned in full. Thus, Plaintiff has suffered no damages under these sections of the MVRSFA, and summary judgment must be granted in favor of Defendant. *See id.* at § 520.12(2); *Green v. Palm Auto Plaza, Inc.*, No. CL-99-7907AG, slip op. at pp. 1-2 ((15th Jud. Cir. Nov. 17, 2003), *aff'd* without opinion, 940 So. 2d 499 (Fla. 4th DCA 2006), rehearing denied, Nov. 14, 2006).[3]

Furthermore, summary judgment must also be granted on Plaintiff's MVRSFA claims in Count III of the Amended Complaint. Count III states that is also a cause of action for statutory penalties, costs, and attorneys' fees pursuant to Section 520.12(2) for violations of the MVRSFA at Sections 520.13 and 520.995(1)(c). First, the Defendant is entitled to

---

[3] Although Plaintiff does not ask for damages for emotional distress in Counts II and III of the Complaint, the Court notes that the MVRSFA does not allow statutory damages for the emotional distress suffered by Plaintiff. *See* § 520.12(2); *see also Trotter v. Ford Motor Co.*, 868 So. 2d 593, 594 (Fla. 2d DCA 2004) (stating that the remedies for violations of the MVRSFA are those stated in the Act, and the Act does not allow plaintiffs' claim for restitution of all amounts paid).

judgment on the MVRSFA claims in Count III for the reasons previously stated, namely that it is undisputed that Plaintiff has suffered no compensable damages under the statute.

Secondly, Section 520.995 of the Florida Statutes is not part of the MVRSFA and does not authorize a private right of action. *See, e.g.,* § 520.01, Florida Statutes (2006). Section 520.995 authorizes the State of Florida Office of Financial Regulation to, *inter alia*, deny an application for a sales license, revoke a sales license, or institute disciplinary action for misrepresentations in retail installment transactions. *E.g., Dept. of Banking and Finance v. Credicorp, Inc.*, 684 So. 2d 746, 752 (Fla. 1996). The Court can find no language in the statute or locate any Florida case which authorizes a private right of action for a violation of Section 520.995. *See, e.g., id.* (describing the statute as part of a state regulatory scheme); §§ 520.995(1), (2), Florida Statutes (2006) (stating only that a violation allows the state office to enter a disciplinary order); § 520.996(3) (authorizing a "retail buyer or owner" only to file a written complaint with the Department of Financial Services).

Accordingly, Defendant is entitled to summary judgment on Count III of the Amended Complaint.

### B. Plaintiff's Claims under the Fair Credit Reporting Act ("FCRA")

Summary Judgment must also be granted on Count IV of the Amended Complaint which asserts a cause of action against Defendant for violations of the Fair Credit Reporting Act. In Count IV, Plaintiff avers that Defendant is liable for actual or statutory penalties, costs, and attorneys' fees under the FCRA for requesting and obtaining Plaintiff's consumer credit information for the purposes of satisfying its curiosity instead of for the purpose of extending credit. (Doc. No. 29, ¶ 48). Specifically, Plaintiff avers that despite being

licensed to extend credit, Defendant claims it is not a creditor and obtained her credit report exclusively for the purpose of making a preliminary determination as to the likelihood of being able to locate a suitable third party to which to assign financing. (*Id*. at ¶ 51-52).

Greg McClellan, the General Manager of Cory Fairbanks Mazda, testified before the Court and during his deposition that Defendant is not a lender. (*E.g*., Doc. No. 74, p. 95). Mr. McClellan further testified that if a customer asks Defendant to help him or her obtain financing, Defendant will always pull the customer's credit report. (*Id.* at p. 36). The finance manager then reviews the report to determine the customer's Beacon score and to see if there are any areas in the credit history that a bank may question. (*Id*. at p. 37). Defendant uses this information to construct a deal structure and to determine if it feels that a lender would accept the customer. (*Id*. at pp. 39-40). Lastly, Defendant transmits the credit application and credit information to potential lenders in the hopes that one will finance the transaction. (*Id*. at p. 38). This was the process that occurred with Plaintiff. The paperwork was completed, but Defendant was unable to obtain third-party financing for the completed contract. (*E.g., id.* at p. 119).

The documents signed by Plaintiff notified her that Defendant might attempt to secure third-party financing. The Bailment Agreement signed by Plaintiff states that the agreement is "Pending credit approval of buyer(s) by lending institution [...]." (Doc. No. 74, Ex. 9). The RISC signed by Plaintiff states in large, bold lettering that "The Seller may assign this contract and retain its right to receive part of the finance charge." (Doc. No. 74, Ex. 2). Finally, Plaintiff signed a Mazda American Credit application statement which provides, "I authorize you to check my credit and employment history *and to provide and/or*

*obtain* information about credit experience with me." (Doc. No. 74, Ex. 7) (emphasis added).

In the instant case, there is no genuine issue of material fact with regard to Plaintiff's FCRA claim, and summary judgment must be granted in favor of Defendant. Where a prospective buyer signs a retail installment contract in which the seller makes clear that the dealer may attempt to assign tentative financing arrangements to third-party lenders, there is no FCRA violation for accessing the consumer's credit information. *See, e.g., Stergiopoulous & Castro v. First Midwest Bancorp, Inc.,* 427 F.3d 1043, 1045-47 (7th Cir. 2005) (affirming judgment in favor of lender where potential class-action plaintiffs claimed that attempt to assign contract to third-party lender without explicit consent violated the FCRA). When creating the FCRA, Congress envisioned the dissemination of consumer reports for the purpose of assessing a consumer's eligibility for a benefit, collecting money owed under an agreement, assessing a consumer's credit risk, and other predictable needs that arise in the midst of a typical business transaction. *Smith v. Bob Smith Chevrolet*, 275 F.Supp.2d 808, 816-17 (W.D. Ky. 2003). Obtaining a credit report in connection with a new business transaction in order to determine the consumer's eligibility, that is, whether the business wishes to undertake a transaction with the consumer, is a permissible purpose under the FCRA. *Id.* at 818 (citing FTC Informal Staff Opinion Letter, William Haynes (Mar. 2, 1998); FTC Informal Staff Opinion Letter, David Medine (Feb. 11, 1998); 116 Cong. Rec. 36, 572 (statement of Rep. Sullivan)).

For these reasons, the Court grants summary judgment on this issue in favor of Defendant.

### C. Plaintiff's Claims Under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

Count V of the Amended Complaint states that Defendant is liable to Plaintiff for violations of the Florida Deceptive and Unfair Trade Practices Act. ("FDUTPA"). Unlike the prior counts of the Amended Complaint, Plaintiff seeks actual damages as well as declaratory and injunctive relief. (Doc. No. 29, ¶ 58).

The FDUTPA broadly declares unlawful any unfair or deceptive acts or practices committed in the conduct of any trade or commerce. § 501.204(1), Fla. Stat. (2006). Section 501.211 provides that any person who has suffered a loss as a result of such practices may commence a private action for actual damages and possibly attorney's fees and court costs. § 501.211(2), Fla. Stat. (2006). In creating the FDUTPA, the Florida legislature intended to create a simplified statutory cause of action which bestows additional substantive remedies on Florida citizens to recover economic damages related to a product or service purchased in a consumer transaction involving unfair or deceptive trade practices or acts. *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. 2d DCA 1997). Thus, the Florida Supreme Court has emphasized that the remedies of the FDUTPA "are in addition "to other remedies available under state or local law. *Pinellas County Department of Consumer Affairs v. Castle*, 392 So.2d 1292, 1293 (Fla. 1980). A practice is unfair under the FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Suris v. Gilmore Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. 3d DCA 1995).

### i. Plaintiff's Claims for Declaratory Relief Based on Violations of Other Consumer

**Protection Statutes**

Summary judgment must be granted in favor of Defendant on Plaintiff's claims for declaratory and injunctive relief. Plaintiff seeks a declaration that Defendant's acts and practices are in violation of the TILA, the MVRSFA, and the FCRA. (Doc. No. 29, ¶¶ 60-61). Plaintiff's claims are not well taken.

First, for the reasons previously stated above, the Court finds that Defendant has not violated the MVRSFA and the FCRA. (*See supra* Sections III-A and III-B of this Order).

Secondly, it is undisputed that Defendant has not violated the TILA with respect to the transaction in question. On March 27, 2007, the parties entered a stipulation of dismissal regarding Plaintiff's TILA claim. (Doc. No. 61). Furthermore, Defendant cannot be found to have violated the TILA, as that statute does not apply to credit transactions, such as the one at issue, in which the total amount financed exceeds the statute's jurisdictional maximum amount of $25,000.00. 15 U.S.C. § 1603(3).

For these reasons, the Court grants summary judgment in favor of Defendant on Plaintiff's claims for declaratory and injunctive relief under the FDUTPA.

**ii. Plaintiff's Remaining Claims Under the FDUTPA**

Lastly, there is no genuine issue of material fact, and summary judgment must be granted in favor of Defendant as a matter of law with regard to Plaintiff's remaining claims under the FDUTPA. Plaintiff states that under the FDUTPA Defendant's actions with regard to the transaction at issue are nonetheless misleading, deceptive, unfair, or unconscionable and that she is entitled to declaratory and injunctive relief, actual damages, costs, and attorney's fees. (*See generally* Doc. No. 29 at pp. 16-21).

Plaintiff's claim for monetary damages fails because it is undisputed that Plaintiff has suffered no actual damages. Plaintiff was never charged a finance charge or any other fee by Defendant, her down payment was returned in full, and her insurance premiums did not change as a result of taking possession of, and later returning, the Mazda. A plaintiff cannot recover a monetary remedy under the FDUTPA where she fails to establish that she suffered actual damages as a result of the defendant's misrepresentations. *Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997) (citing *In re Crown Auto Dealerships, Inc.*, 187 B.R. 1009, 1018 (Bankr. M.D. Fla. 1995). Subjective feelings of disappointment are insufficient to form a basis for actual damages under the statute. *Id*. (citing *Crown*, 187 B.R. at 1018); *Haun v. Mealy Imports, Inc.*, 285 F.Supp.2d 1297, 1307 (M.D. Fla. 2003). There can be no monetary recovery under the FDUTPA where the plaintiff has suffered no out-of-pocket losses. *Himes .v. Brown & Co. Secs. Corp.*, 518 So. 2d 937, 938 (Fla. 3d DCA 1987). Thus, Defendant is entitled to judgment on this claim.

Plaintiff's further argument that Defendant's cancellation of Plaintiff's contract was deceptive, unfair, or unconscionable under the FDUTPA is not well taken. The documents signed by Plaintiff clearly disclose several ways in which Defendant may legally cancel the contract or in which the contract would not be binding. The bailment agreement states that it is pending credit approval of the buyer by a lending institution and that the document is binding "if dealer is able to provide buyer(s) with financing according to the terms of the sales agreement." (Doc. No. 74, Ex. 9). The offer and purchase option contract states that "Seller agrees to refund to Buyer the purchase price of this option only if buyer is unacceptable to such lending institutions for the credit amount requested [...]." (Doc. No.

74, Ex. 6).

Furthermore, the bailment agreement also states that the dealer makes delivery of the vehicle in reliance upon the truth and correctness of the statements in the loan application, and that any untrue or incorrect statement or any misrepresentation by the buyer entitles the dealer to immediately rescind the sale. (Doc. No. 74, Ex. 9). Plaintiff's credit application statement, signed by Plaintiff, indicates that Plaintiff has never filed for bankruptcy and has never had a car or other merchandise repossessed. (Doc. No. 74, Ex. 7). Plaintiff testified in her deposition and during the hearing that she has filed for bankruptcy and has had several automobiles repossessed in the past. (*E.g.,* Doc. No. 95). Plaintiff testified at the hearing that she answered Defendant's employees credit inquiries truthfully and that someone else filled out such answers on the form. However, this is immaterial, as the dealer's right to rescind the contract is not conditioned on Plaintiff's dishonesty, but on any material, incorrect statement on Plaintiff's documentation. (Doc. No. 74, Ex. 9) (dealer may rescind based on an untrue, incorrect, or misrepresented statement). For these reasons, the Court grants summary judgment in favor of Defendant on this claim.

Plaintiff's final argument is that Defendant's sales documents are misleading, unfair, or unconscionable because the RISC names the Defendant as the creditor, yet other documents purport to relieve Defendant of its status as creditor so that Defendant may circumvent the requirements of the TILA and the MVRSFA when it is convenient. (Doc. No. 29, ¶ 60). Plaintiff's argument fails for several reasons. First, nowhere in the RISC does the Defendant undertake the obligation to be the sole lender. The RISC identifies Defendant as "Creditor - Seller," and clearly states in bold letters that the seller may assign the contract

to a third party. (Doc. No. 74, Ex. 2).  Likewise, the offer and purchase option contract also states that the buyer and seller may execute a retail installment sales contract "subject to acceptance of such contract by a lending institution (*sic*) acceptance [...]." (Doc. No. 74, Ex. 6).

The use of descriptive labels in a contract is not determinative of the actual legal relationship between the parties. *E.g., Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 854 (Fla. 2003) (citing *Nazworth v. Swire Florida, Inc.*, 486 So. 2d 637, 638 (Fla. 1st DCA 1986)).  The status of the parties depends upon the language of the contract and all the circumstances of their dealings with each other. *See, e.g., id*. at 854.   In the instant case, Defendant made clear as a matter of law that it was not necessarily the sole lender in the transaction in question.

For these reasons, summary judgment is granted in favor of Defendant.

### D.  Motion for Class Certification

For reasons similar to those stated in granting summary judgment in favor of Defendant on all of Plaintiff's claims, Plaintiff's Motion for class certification must be denied.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members she seeks to represent. *E.g., Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 156 (1982).  No class action may proceed unless there is a named plaintiff with standing to represent the class. *E.g., Graham v. State Farm Fire and Cas. Co.*, 813 So. 2d 273, 274 (Fla. 5th DCA 2002).  "[I]f none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class."

*O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

In the instant case,[4] Plaintiff's TILA claim has been dismissed, and the Court finds that Plaintiff has suffered no actual damages under the MVRSFA or the FDUTPA. Furthermore, Defendant is also entitled to summary judgment on Plaintiff's additional FCRA and FDUTPA claims. Plaintiff has failed to sustain any claim on her own behalf, and thus she lacks sufficient commonality, typicality, and adequacy to represent the proposed classes under Rule 23. *See, e.g., Daniel v. Northrop Grumman Space & Mission Sys. Corp.*, 155 Fed. Appx. 427, 430 (11th Cir. 2005) (affirming district court's denial of class certification because summary judgment was properly granted for defendants on plaintiffs' claims). For these reasons, the Court denies the Motion for class certification.

## **Conclusion**

Based on the foregoing, Defendant's Motion and Memorandum of Law in Support of Defendant's Motion for Summary Judgment, filed by Defendant on May 1, 2007, (Doc. No. 71), is **GRANTED**. Plaintiff's Motion for Partial Summary Judgment, filed by Plaintiff on May 29, 2007, (Doc. No. 82), is **DENIED**. Plaintiff's Motion for Class Certification, filed by Plaintiff Alisa Jones on December 4, 2006, (Doc. No. 39), is **DENIED**. The Clerk shall close this case.

---

[4] Although the Court believes that in the case at bar the motion for class certification is moot due to Plaintiff's failure to sustain any of the claims in the Amended Complaint, the United States Court of Appeals for the Eleventh Circuit has suggested that in some circumstances a Court should consider the merits of a motion to certify class despite the named plaintiff losing her case on the merits. *See Cooper v. Southern Company*, 390 F.3d 695, 710 (11th Cir. 2004) (stating that a plaintiff's capacity to act as representative of the class is not ipso facto terminated when he loses his case on the merits).

**DONE** and **ORDERED** in Chambers in Orlando, Florida this 7th day of August, 2007.

*[Signature: Patricia C. Fawsett]*

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

Clerk of Court